James Denver DALE, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14622.

Court of Criminal Appeals of Oklahoma.

Jan. 15, 1969.

Robert Duncan, Perry, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Judson H. Pierce, Asst. Dist. Atty., of Noble County, for defendant in error.

BUSSEY, Judge.

James Denver Dale, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Noble County, Oklahoma for the offense of Adultery, After Former Conviction of a Felony; judgment and sentence was assessed in accordance with the verdict of the

jury fixing his punishment at seven years imprisonment in the State Penitentiary, and a Post Conviction Appeal has been perfected to this Court.

Briefly stated, the facts adduced on the trial, reveal that Nancy Bays, a member of the Caucasian race, chief witness for the State, testified that she was eighteen years old, and was legally married on the 3rd day of August, 1965, to Gene Bays, an Indian, in Hot Springs, Arkansas; that on or about August 18, 1965, Nancy and her husband were living with Nancy's father, Clarence Church, in Perry, Oklahoma. On the morning of that day, Nancy walked from the home toward town, intending to go to a jewelry store to get her wedding rings. While on her way to town, she passed the C & A Laundry on South 7th Street and saw her cousin, Linda O'Neal, inside the laundry and went in to talk to her. They soon came outside on the sidewalk, and Linda left. Nancy went back inside and the defendant saw Nancy and followed her into the laundry. The defendant told Nancy that a man by the name of Louis Jeans was at the premises of Alfonzo Brown, and wished to talk to her. This was about two blocks from the laundry and the defendant and Nancy walked down the railroad tracks to Alfonzo Brown's, which was a recreation place for Negroes. Upon arriving there, the defendant took a key from his pocket, opened the door, and took her to the back room where there was a bed, divan and television set. The defendant left her there for approximately fifteen minutes and when he returned he brought Alfonzo Brown with him, who brought in a case of beer and put it in the refrigerator. They told her that Louis Jeans had to leave suddenly to attend a council meeting, and could not be there. Alfonzo offered Nancy a beer, a little of which she drank, and Alfonzo sat down beside her, inquiring as to her age, if she were married, etc., and asked Nancy if she would be his girl. She told him she could not, as she was married. Alfonzo did, however, have sexual intercourse with Nancy there on the bed. In the meantime,

other persons came on the premises, including an older Negro woman by the name of Florence Johnson. The juke box was playing and the group in general was having a good time. Later the defendant took Nancy in the room where the bed was, and had sexual intercourse with her.

The witness, Delores Harris, testified that she occupied a jail cell with Nancy Bays while Nancy was being held as a material witness, during the period that defendant was being held in the same jail in default of bond. There was a wall between her cell and that of the defendant. This witness further testified that while she was in that cell, she heard a conversation between the defendant and Nancy Bays, in which the defendant tried to get Nancy to change her testimony, and coached her as to what to say when she testified at the trial.

Gene Wood, then Chief of Police of Perry, Oklahoma, testified that on or about August 18, 1965, Gene Bays, husband of Nancy, notified him that Nancy was missing; that he went to work in an effort to locate Nancy, and finally found her on August 18th at the home of one Florence Johnson; that several Negroes were also there, including the defendant and Calvin Brown. Mr. Wood took custody of Nancy, and committed her to jail, so that proper investigation could be launched.

Dr. A. M. Brown testified that he had treated Nancy since she was thirteen years of age and that she had thyroid trouble. He further testified that she was mentally retarded, and had an I. Q. level of not to exceed a child of thirteen years of age, and that it could possibly be lower than that. It was his opinion that the condition was congenital and that her mentality was such that she was vulnerable to obey suggestions of other people and could be persuaded to do almost anything.

Willie Harris testified, in substance, that he resided in the home of Florence Johnson and that about noon of August 18, 1965, he and Florence Johnson and Calvin Brown went to the place operated by Alfonzo

Brown. Upon arriving there they saw the defendant, Nancy Bays, and Billie Shelton. All were Negroes other than Nancy Bays. He testified that they played the juke box and he soon left in a pick-up and went to a liquor store, purchased some liquor and brought it back to the joint. They all began drinking in earnest, except Nancy, and he thought that Nancy acted perfectly sober. He had never seen Nancy before, but had the impression that she was about fourteen years old. He saw the defendant take Nancy in the back room where the bed was, but he did not see them come out. He further testified that later that day, or the next day, the defendant told him he had "had a good time with the girl."

Ruth Tabor, called as a witness for the State, testified that she was a member of the faculty of the Perry Public School system, and had been for twenty-two years, teaching speech, and acting as Student Counselor. She stated that she had personally known Nancy since she was a small child and produced her scholastic record covering her entire school attendance from the elementary first grade. She testified that Nancy had never passed any grade in school, but had been "socially promoted," from one grade to the next, and was passed only because of her age and size because she was mentally unable to do any of the school work.

Margaret F. Shaw, Psychologist, testified that on September 29, 1965, she conducted an examination of Nancy Bays, and as a result of the examination, it was her conclusion that Nancy's mental age was that of a child of the age of ten years and four months, which constitutes what is professionally known as mental deficiency idiopathic moderate.

■ As his first assignment of error upon which he seeks reversal, the defendant urges that the trial court was without jurisdiction to entertain the charge in the instant case for the reason that although the prosecution was commenced by the husband of the woman with whom the defendant allegedly had voluntary sexual relations, that the husband did not appear as a witness at the trial and this failure to carry on the prosecution deprived the trial court of jurisdiction. Many authorities are cited by the defendant, none of which reach the issue here presented, nor indeed, do any of the authorities relied on by the State. This issue arises out of the construction and application of 21 O.S. § 871, the same providing:

"Adultery defined—who may institute prosecution. Adultery is the unlawful voluntary sexual intercourse of a married person with one of the opposite sex; and when the crime is between persons, only one of whom is married, both are guilty of adultery. Prosecution for adultery can be commenced and carried on against either of the parties to the crime only by his or her own husband or wife as the case may be, or by the husband or wife of the other party to the crime: Provided, that any person may make complaint when persons are living together in open and notorious adultery."

Under the statute above set forth it is argued that although the aggrieved spouse instituted the proceedings, he did not carry them on. The early case of Lee v. State, 28 Okl.Cr. 397, 231 P. 324, while not dealing specifically with this issue, sheds some light on it. In Lee v. State, supra, this Court, speaking through the Honorable Judge Bessey, had this to say:

"In construing this statute the word 'commenced' and the words 'and carried on' should be construed to harmonize with the general provisions of criminal procedure. There can be no question but that the word 'commenced' implies that the injured party may start the proceedings by signing a complaint, and that prosecution for this offense can be begun in no other way. But after the prosecution has been so commenced it must be carried on largely by the county attorney. Under our statutes a private individual cannot become a public prosecutor, nor can a county attorney act purely as a private prosecutor."

In the instant case, as reflected by the record, the crime for which the defendant stands convicted was committed outside the presence of said spouse and his only knowledge of its consummation could have been based only on hearsay evidence which could not be competently testified to by said spouse if called as a witness. It therefore appears that to have subpoenaed him to testify in the case would have been a vain and useless thing, for he could have added nothing to the prosecution's case. In the light of Lee v. State, supra, and under the circumstances here presented, we are of the opinion that the term "carried on" as used in 21 O.S. § 871, supra, contemplated that the complaining spouse render aid and assistance to the prosecuting authorities by supplying them with any competent evidence which he was capable of presenting. We think it further follows that had the aggrieved spouse desired to dismiss the prosecution and refused to cooperate with the prosecuting authorities, the State could not have then carried on the prosecution without his cooperation, but such were not the facts in the instant case. We are of the opinion, and therefore hold, that the trial court had jurisdiction of this cause and authority under law to pronounce the judgment and sentence imposed in accordance with the verdict of the jury.

■ Defendant's second and third contentions are substantially that the Information was not sufficiently worded so that the accused might know with reasonable particularity from the allegations what facts the prosecution considered as sufficient to render him guilty of the offense charged, so as to enable him to make his defense thereto, and that the Information charges essential facts so specifically that a judgment in the case would be a complete defense to any subsequent prosecution for the same offense. Even a cursory examination of the Information discloses that the facts are alleged with sufficient particularity as to apprise a person of ordinary understanding that he was charged with the offense of Adultery After Former Conviction of a Felony, and we therefore hold that this assignment of error is without merit.

This leads us to a consideration of the defendant's fourth assignment of error that the judgment of the jury was unconscionable and excessive and out of proportion to the crime allegedly committed, and that defendant did not receive a fair and impartial trial due to newspaper publicity and certain prejudicial remarks made by the County Attorney during the course of the trial.

■ In this connection we observe that the defendant did not seek a change of venue or a continuance on the grounds of adverse newspaper publicity, nor indeed, were any of the purported newspaper articles incorporated in the record, so this portion of the defendant's assignment of error is not properly before the Court and is not supported by the record.

■ Under the defendant's second portion of this proposition, to-wit: the prejudicial remarks of the County Attorney, he cites numerous instances in his brief, but a careful examination of the case made reflects that no objection was interposed to the questions propounded by the prosecutor, nor exceptions taken to the ruling of the court, except in one instance which we do not consider of sufficient importance to deal with in this opinion. We must accordingly hold that this assignment of error is without merit. It is also argued under the proposition that the verdict of the jury and the judgment and sentence assessing the punishment at seven years imprisonment for the offense of Adultery After Former Conviction of a Felony, is excessive. In this regard we deem it only necessary to observe that where the evidence amply supports the verdict of the jury, the court thoroughly and meticulously instructs the jury on the law applicable and the punishment imposed is well within the range provided by law, the Court of Criminal Appeals will not modify the judgment and sentence imposed

unless it can determine from an examination of the record as a whole that the verdict of the jury was influenced by errors intended to prejudice the jury against the defendant and caused them to impose a greater punishment than would ordinarily be imposed. We do not so find in the instant case.

The defendant next urges that the trial court erred in refusing to admit certain letters written by Nancy·Bays, while she was in jail as a material witness, addressed to Florence Johnson and Calvin Brown, wherein she stated that she had told the County Attorney what had happened because she was fearful that he would send her to a mental institution if she did not. In her letter to Calvin (who was also charged with adultery with this witness) she expressed her love and in the letter addressed to Florence she requested that Florence assist her and the others to escape from the county jail. This offer of proof was considered by the court and properly overruled, for the reason that they did not controvert any of the testimony given by this witness during the course of the trial, nor did they negate the defendant's guilt. Moreover, the plan to escape, if admitted, could have been very prejudicial against the rights of the accused. We observe further that on cross-examination of this witness she freely admitted having written the same and testified to their contents and that she was reluctant to testify against the defendant. We fail to see where the court erred in refusing to admit these exhibits for the reasons heretofore stated.

While not argued as an assignment of error in the brief of the defendant, but set forth in his conclusion and presented in his oral argument, he urges that the evidence was wholly insufficient to support the verdict of the jury in that there was no evidence tending to corroborate the testimony of Nancy Bays. With this contention we do not agree, for in addition to the testimony of Nancy Bays appears also the testimony of Florence John-

son and Willie Harris, which was ample to present the issue to the jury for their determination. The defendant testified in his own behalf and denied that he had had sexual relations with Nancy Bays. This clearly presented a question of fact for the jury, and as was said in Hudson v. State, Okl.Cr.App., 399 P.2d 296:

> "The jury is the exclusive judge of the weight of the evidence and credit to be given to the witnesses. Where there is a direct conflict in the evidence, or it is such that different inferences may be properly drawn from it, the jury's determination will not be interfered with upon the ground that the evidence is insufficient to sustain a conviction, where there is competent evidence in the record from which the jury might reasonably conclude that the defendant is guilty."

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BRETT, P. J., and NIX, J., concur.